UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
ADRIAN BARRIE SMITH,                                 :

                        Plaintiff,                   :

        -v.-                                          :

EMILY BLAVATNIK, *et al.*,                           :

                        Defendants.                  :
-------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/30/14

**REPORT AND
RECOMMENDATION**

14-CV-503 (PAC) (JLC)

**JAMES L. COTT, United States Magistrate Judge.**

**To The Honorable Paul A. Crotty, United States District Judge:**

*Pro se* Plaintiff Adrian Barrie Smith has brought this action alleging breach of contract
and employment discrimination in connection with his business of providing domestic workers
to private clients.  Defendants Emily Blavatnik, Leonard Blavatnik, EB Household LLC, and
Access Industries now move to dismiss Smith's complaint for lack of subject-matter jurisdiction,
failure to state a claim, and based on the doctrine of *res judicata*, pursuant to Rules 12(b)(1) and
(6) of the Federal Rules of Civil Procedure.  For the reasons set forth below, I recommend that
Defendants' motion be granted and that Smith's complaint be dismissed with prejudice.

## I.    BACKGROUND

### A.  Smith's Allegations

Smith commenced this action using the Court's form complaint for *pro se* litigants.  *See*
Complaint dated Jan. 24, 2014 ("Compl.") (Dkt. No. 2).  Smith, a citizen of the United Kingdom
and a lawful permanent resident of the United States, alleges that he runs a business that helps
individuals find butlers, housekeepers, nannies, and other staff to work in private homes.

Compl., at 6, ¶ 2C.¹  According to Smith, he was asked to find domestic help for Defendants

Emily Blavatnik and her husband Leonard Blavatnik in 2011 or 2012.  *Id.* at 6, ¶ 3B.  Smith

alleges that Emily Blavatnik pays her domestic staff through corporate Defendant EB Household

LLC, which is in turn "paid for" by Defendant entity Access Industries.  *Id.* at 9.   According to

Smith, he communicated with the Blavatniks' butler, Wilfredo Balmaceda, who refused to

interview women for the assistant butler position and asked for "profile pictures" of candidates

before agreeing to interview them.  *Id.* at 7; Email from Wilfredo Balmaceda to Adrian Smith

dated Mar. 11, 2011, attached as Exhibit ("Ex.") A to Compl., at 15.  Smith also claims that he

proposed two "Philippine" housekeepers to Defendants, in response to which Balmaceda sent

Smith emails stating "No phillipines thanks" and "No Philline since today."  Compl., at 7;

Emails from Wilfredo Balmaceda to Adrian Smith dated April 29, 2011, attached as Ex. A to

Compl., at 16-18.  According to Smith, he consequently decided to cease providing his services

to Defendants, who refused to pay for the time he had already spent on their behalf.  Compl., at

7.

**B.  Smith's Prior Actions in State Court**

Smith sued Leonard Blavatnik in 2011 in the Small Claims Part of the New York City

Civil Court ("small claims court"), raising claims arising out of the same set of facts presently

before this Court.  *See Smith v. Blavatnik*, 963 N.Y.S.2d 816 (Civ. Ct. 2011) ("*Smith I*").  Smith

alleged that Leonard Blavatnik had breached a verbal contract for Smith to assist the Blavatniks

in hiring domestic servants and that Balmaceda had engaged in discrimination by sending emails

stating "No phillipines thanks," "No Philline since today," and "I need profile picture before

---

¹      Citations to page numbers in the complaint refer to the page number of the ECF
document, unless a paragraph number is indicated on the form itself.

interviewing." *Id.* at 818. After a bench trial at which Smith, Balmaceda, and Emily Blavatnik's
executive assistant testified, the small claims court dismissed Smith's contract claim with
prejudice, finding that because he did not have a license to operate an employment agency at the
time of his dealings with the Blavatniks, he lacked standing to sue, and that he had failed to
establish the existence of any agreement. *Id.* at 817-18; *see* N.Y. Gen. Bus. Law § 172. The
court also rejected Smith's discrimination claim, remarking that "[i]f anyone was engaging in
unlawful discrimination, it was Mr. Smith" because he had sent potential applicants to the
defendants for certain positions based solely on their gender. *Smith I*, 963 N.Y.S.2d at 819.

Smith filed subsequent suits in the same court based on identical claims. One action,
brought against EB Household, LLC, was dismissed based on the doctrine of *res judicata*, as it
alleged the "same nucleus of operative facts" as the earlier case against Leonard Blavatnik. *See*
Decision and Order, *Smith v. EB Household, LLC* (Index No. SCNY 3708/11) ("*EB
Household*"), attached as Ex. B to the Declaration of Jared N. Fertman ("Fertman Decl.") dated
April 7, 2014 (Dkt. No. 13). Another action, brought against Richard Storey, an employee of EB
Household, was also dismissed on the same grounds. *See* Decision and Order, *Smith v. Storey*
(Index No. SCNY 811/12), Ex. D to Fertman Decl.

On December 12, 2012, the small claims court issued an order requiring Smith to apply
for leave of the court before commencing any new action, citing the possibility that Smith was
using litigation for purposes of harassment as he had initiated 51 actions since 2006, against a
litany of defendants including Rupert Murdoch, Jerry Seinfeld, Mariah Carey, and the *New York
Times*. *See* Order Requiring Adrian B. Smith to Make Application for Leave to Commence Any
New Action in the Small Claims Part, attached as Ex. K to Fertman Decl. Pursuant to that order,
the court barred several complaints that Smith and his company, UK Nanny LLC, had filed

against the Blavatniks and associated entities/individuals without first obtaining leave from the court. *See Smith v. Blavatnik* (Index No. SCNY 982/12); *UK Nanny LLC v. Blavatnik* (Index No. SCNY 30273/12), *UK Nanny LLC v. Storey* (Index No. SCNY 30236/12); *Smith v. Access Industries* (Index No. SCNY 1362/12); *UK Nanny LLC v. Access Industries, Inc.* (Index No. SCNY 60512/12); *UK Nanny LLC v. EB Household* (Index No. SCNY 60372/12).[2]

## C.  Smith's Prior Actions in Federal Court

In addition to the actions he filed in state court, Smith has filed a number of lawsuits raising similar allegations in this Court.  One such complaint, accusing the comedian Jerry Seinfeld and his wife Jessica Seinfeld of discrimination and breach of contract in relation to Smith's purported staffing-consultant services, was dismissed on the basis of *res judicata* for raising claims already adjudicated by the small claims court.  *Smith v. Seinfeld*, No. 13-CV-4211 (JMF), 2014 WL 700202, at *2-3 (S.D.N.Y. Feb. 24, 2014) ("*Seinfeld*").  Smith's other pending actions named as defendants Cantor Fitzgerald Chief Executive Officer Howard Lutnick, as well as his wife and manager (No. 13 Civ. 4212) (motion to dismiss pending), and the hedge-fund manager Noam Gottesman (No. 13 Civ. 3491) (voluntarily dismissed).  Yet another lawsuit filed by Smith, alleging libel and slander against the *New York Times* and reporter Andrew Ross Sorkin after the publication of an article outlining Smith's prodigious litigiousness, was dismissed for lack of jurisdiction.  *Smith v. Sorkin*, No. 13-CV-5805 (CM) (JLC), 2013 WL 5718485, at *1-2 (S.D.N.Y. Oct. 17, 2013).

## D.  Procedural History of This Action

After Smith filed his complaint on January 27, 2014, Defendants moved to dismiss on

---

[2]      Copies of the dismissals of these cases are attached to the Fertman Decl. as Exs. E through J.

April 7, 2014.  Notice of Motion dated April 7, 2014 (Dkt. No. 11); Memorandum of Law in

Support of Defendants' Motion to Dismiss dated April 7, 2014 ("Def. Mem.") (Dkt. No. 12).

Smith submitted an opposition to Defendants' motion in the form of a letter dated April 12,

2014.  Letter in Opposition to Defendants' Motion to Dismiss dated April 12, 2014 ("Pl. Opp.")

(Dkt. No. 15).  Defendants filed a reply brief on May 16, 2014.  Reply Memorandum of Law in

Further Support of Defendants' Motion to Dismiss This Action dated May 15, 2014 ("Def.

Reply") (Dkt. No. 16).  Smith then submitted, as a sur-reply, a letter dated May 18, 2014.[3]  Letter

in Further Opposition to Defendants' Motion to Dismiss dated May 18, 2014 ("Pl. Reply") (Dkt.

No. 19).[4]

## II.   **DISCUSSION**

### A. **Applicable Standards**

Under Rule 12(b)(1), a court may dismiss an action where it lacks subject-matter

jurisdiction.  In doing so, the court must accept as true all the facts alleged in the complaint and

may refer to evidence outside the pleadings, such as affidavits, to resolve threshold jurisdictional

---

[3]     Sur-replies generally are not permitted in federal court.  *See Soto v. Wright*, No. 11-CV-2289 (PAC) (JLC), 2012 WL 265962, at *2 n.3 (S.D.N.Y. Jan. 26, 2012) (citation omitted), Report and Recommendation *adopted by* 2012 WL 639166 (S.D.N.Y. Feb. 28, 2012).  In any event, Smith's May 18, 2014 letter does not advance any new legal arguments relevant to the instant motion.

[4]     Smith claims that he did not receive proper service of the motion papers, Pl. Opp., at 1, only receiving them on May 18, the day he drafted his sur-reply.  Pl. Reply, at 1.  Smith's objections as to service are without merit.  Defendants have submitted an affidavit attesting that their motion papers were deposited with Federal Express for delivery to Smith on April 7, 2014.  *See* Affidavit of Service dated Apr. 21, 2014 (Dkt. No. 14).  Smith objects that he was not served "correctly" because he never personally signed for the papers.  Pl. Reply, at 1.  However, under Rule 5, a motion may be served simply by, among other options, "mailing it to the person's last known address," with service considered "complete upon mailing."  Fed. R. Civ. P. 5(b)(2)(C).  Thus, despite Smith's unfounded belief that he should have been hand delivered the papers, Defendants adequately effected service of the motion.  *See, e.g.*, *United States v. Certain Real Prop. & Premises Known as 63-29 Trimble Rd., Woodside, N.Y.*, 812 F. Supp. 332, 334 (E.D.N.Y. 1992) (service valid when notice of motion mailed by Federal Express).

issues. *See, e.g., Young v. Lord & Taylor, LLC*, 937 F. Supp. 2d 346, 350 (E.D.N.Y. 2013)

(citing *Antares Aircraft, L.P. v. Federal Republic of Nigeria*, 948 F.2d 90, 96 (2d Cir. 1991)).

Rule 12(b)(6) allows a party to move to dismiss a complaint for "failure to state a claim

upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  In considering a Rule 12(b)(6)

motion, a court accepts all factual allegations in the complaint as true and draws all reasonable

inferences in the plaintiff's favor. *See, e.g., Warren v. Colvin*, 744 F.3d 841, 843 (2d Cir. 2014).

To survive dismissal, enough facts must be pleaded "to state a claim to relief that is plausible on

its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Facial plausibility exists when

the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(citing *Twombly*, 550 U.S. at 556).  While *pro se* complaints are read liberally to raise the

strongest arguments they suggest, *see Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474

(2d Cir. 2006), they must still state a plausible claim for relief. *Walker v. Schult*, 717 F.3d 119,

124 (2d Cir. 2013) (citing *Harris v. Mills*, 572 F.3d 66, 73 (2d Cir. 2009)).  Thus, a district court

should dismiss a *pro se* plaintiff's complaint if it "fail[s] to meet minimum pleading

requirements." *Kinsey v. Bloomberg*, No. 12-CV-8936 (PAE) (JCF), 2014 WL 630670, at *3

(S.D.N.Y. Feb. 18, 2014).

## B.  The Court Has Subject-Matter Jurisdiction Over the Complaint

### 1.  The Court Lacks Diversity Jurisdiction

A plaintiff in federal court must establish that the court has valid subject-matter

jurisdiction over his action, by adequately pleading either diversity of the parties or the presence

of a federal question. *See, e.g., Arbaugh v. Y&H Corp.*, 546 U.S. 500, 513 (2006).  To begin,

Defendants are correct that Smith's complaint fails to establish jurisdiction on the basis of the

former.

Diversity jurisdiction may lie where an action arises between a United States citizen and a citizen or subject of a foreign state, except where the latter is "lawfully admitted for permanent residence in the United States and [is] domiciled in the same State" as the opposing party. 28 U.S.C. § 1332(a)(2). Smith identifies himself in his complaint as a citizen of the United Kingdom and green-card holder who resides in New York and the individual defendants, Leonard and Emily Blavatnik, as U.S. citizens who also reside in New York. Compl., at ¶ I. Thus, it is clear from the face of the complaint that, as this action is between residents of the same state, diversity is lacking. *See Herrick Co., Inc. v. SCS Commc'ns, Inc.*, 251 F.3d 315, 322 (2d Cir. 2001) ("[T]he party seeking to invoke jurisdiction under 28 U.S.C. § 1332 bears the burden of demonstrating that the grounds for diversity exist.") (citation omitted).[5] Smith's argument, that because the Blavatniks live in Manhattan they may be sued for federal claims in New York, has no basis in law. Pl. Opp., at 2.

Furthermore, Smith fails to demonstrate that the amount in controversy exceeds $75,000, exclusive of interest or costs, which is another prerequisite for diversity jurisdiction. *See* 28 U.S.C. § 1332(a). It is the burden of the party asserting jurisdiction to establish "a reasonable probability that the claim is in excess of the statutory jurisdictional amount." *Mehlenbacher v.*

---

[5]     Smith's complaint also lists the two corporate defendants, EB Household and Access Industries, as having New York addresses. Compl., at ¶ IB. For purposes of assessing diversity jurisdiction, a corporate entity is considered a citizen of the state under whose sovereignty it has been incorporated and the state in which it has its principal place of business. 28 U.S.C. § 1332(c)(1). The New York addresses Smith has provided notwithstanding, he fails to allege any information concerning the corporate defendants' principal places of business or their state(s) of incorporation. In any event, regardless of the citizenship of the corporate defendants, the fact that the Blavatniks are residents of New York is a sufficient bar to diversity jurisdiction, which requires *complete* diversity of *all* parties. *See Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373 (1978) ("[D]iversity jurisdiction does not exist unless each defendant is a citizen of a different State from each plaintiff.").

*Akzo Nobel Salt, Inc.*, 216 F.3d 291, 296 (2d Cir. 2000). Smith, in his request for relief in the complaint, simply "leave[s] the financial amount in the hands of the jury." Compl., at ¶ V. Where the complaint does not specify an amount of damages, the court may "examine the nature of the claims, factual allegations within the pleadings, and the record outside the pleadings to determine the amount in controversy." *Burr ex rel. Burr v. Toyota Motor Credit Co.,* 478 F. Supp. 2d 432, 438 (S.D.N.Y. 2006) (citations omitted). Here, the nature of the claims and factual allegations – which revolve around Smith's attempts to place two housekeepers in the Blavatniks' home and some email correspondence with the Blavatniks' butler about another position – do not support a reasonable probability that the purported damages exceeded $75,000, nor is there anything else in the record to suggest that such an amount was involved. *See, e.g.*, *Mehlenbacher*, 216 F.3d at 296. Indeed, in Smith's small claims action against Leonard Blavatnik, arising out of the very same factual allegations as those made here, Smith sought only $5,000 in damages. *See Smith*, 963 N.Y.S.2d at 817. Accordingly, Smith has not sufficiently alleged either the complete diversity of the parties or a sufficient amount in controversy for this Court to exercise diversity jurisdiction over the complaint.

## 2. However, the Court Has Federal Question Jurisdiction

Defendants assert that Smith also fails to implicate the Court's jurisdiction by, alternatively, raising a federal question. Defendants concede that Smith's complaint appears to allege a cause of action for employment discrimination under Title VII, 42 U.S.C. § 2000e *et seq*. Def. Mem., at 8. However, because Smith has not exhausted his administrative remedies with the Equal Employment Opportunity Commission ("EEOC"), which is required before bringing a Title VII suit, Defendants argue that he presents no "cognizable" federal question. *Id.* As a matter of law, Defendants are incorrect as to the question of jurisdiction, but the point is

academic as Smith's failure to exhaust, among other grounds, must lead to dismissal of this suit in any event.

"[P]resentation of a Title VII claim to the EEOC is not a jurisdictional prerequisite, but only a precondition to bringing a Title VII action that can be waived by the parties or the court." *Francis v. City of New York*, 235 F.3d 763, 768-69 (2d Cir. 2000) (citation and internal quotation marks omitted).  In other words, a failure to exhaust administrative remedies does not in itself preclude jurisdiction over a Title VII claim, which undoubtedly presents a federal question, but rather is a substantive defense to be raised once the action is before the court. *See, e.g., Fogle v. Monroe Cnty.*, 831 F. Supp. 2d 602, 606 (W.D.N.Y. 2011) ("Clearly, exhaustion of Title VII claims is required, but the failure to exhaust such claims does not deprive the Court of jurisdiction."); *see also Arbaugh*, 546 U.S. at 511 (clarifying that substantive element of claim for relief under Title VII should not be conflated with issue of subject-matter jurisdiction). Smith's complaint, liberally construed as all *pro se* pleadings must be, asserts a national origin discrimination claim, as it alleges that Defendants refused to hire certain applicants because they were of Filipino ancestry. *See* Compl., at 7.  Therefore, on this basis, the Court may assert subject-matter jurisdiction over the complaint.

## C.  Plaintiff's Complaint Fails to State a Claim

Nonetheless, Smith's employment discrimination claim should be dismissed for failure to state a claim upon which relief may be granted.  First, as noted, Smith has not established, either in his pleadings or by documentary proof attached to his complaint, that he filed a charge with the EEOC concerning his allegations, as is required before bringing suit in federal court. *See, e.g., Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001).  Second, Smith's Title VII claims, which allegedly arose in "2011/2012," Compl., at ¶ III(B), are untimely

as he did not file an EEOC charge within the applicable 300-day limitations period after the alleged discriminatory incidents. *See* 42 U.S.C. § 2000e-5(e); *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002) (claim time-barred if administrative grievance not filed within applicable limits).

In addition, as Defendants argue, Smith does not have standing to bring a Title VII claim, because he himself was not the alleged victim of the purported employment discrimination. Def. Mem., at 8-9. A number of courts have categorically denied standing under Title VII to plaintiffs alleging injury based on discrimination against third-parties, citing so-called prudential concerns. *See, e.g., Bermudez v. TRC Holdings, Inc.*, 138 F.3d 1176, 1180 (7th Cir. 1998) (white female employee lacks standing to allege race discrimination on behalf of black applicants to employment agency); *Patee v. Pacific Northwest Bell Tel.*, 803 F.2d 476, 478 (9th Cir. 1986) ("[M]ale workers cannot assert the right of their female co-workers to be free from discrimination based on their sex."). *See also Warth v. Seldin*, 422 U.S. 490, 499 (1975) ("[T]he plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties."). By contrast, the Second Circuit, declining to determine whether prudential concerns apply to Title VII claims, has found that a plaintiff suing on behalf of third-party targets of discrimination *may* have standing – but its holding appears limited to cases where the plaintiff is himself a member of the same protected class and has had his own experience at work impacted by the alleged discrimination. *See Leibovitz v. New York City Transit Auth.*, 252 F.3d 179, 187 (2d Cir. 2001). Smith, a male from the United Kingdom suing on behalf of female job applicants from the Philippines, is not so situated. Because he does not assert a cognizable injury *to himself* as a result of discrimination to the third parties, he cannot state a claim for relief.

For all these reasons, Smith's Title VII claim should be dismissed.[6]  Moreover, given the absence of any valid federal claims, the Court should decline to exercise supplemental jurisdiction over Smith's contract claim pursuant to 28 U.S.C. § 1367, and it should be dismissed as well.  *See, e.g.*, *Luciano v. Eastman Kodak Co.*, No. 05-CV-6463T (MAT), 2006 WL 1455477, at *5 (W.D.N.Y. May 25, 2006) ("[A] court can, in its discretion, decline to exercise supplemental jurisdiction [over state law claims] if . . . the district court has dismissed all claims over which it has original jurisdiction.") (citing 28 U.S.C. § 1367(c)).

## D.  Smith's Claims Are Precluded by *Res Judicata*

Smith's failure to state a claim is a sufficient basis on which to dismiss his action. Nonetheless, in the interest of thoroughness, the Court also addresses Defendants' meritorious argument that Smith's claims should be precluded by the doctrine of *res judicata*, or claim preclusion, as they have already been adjudicated in small claims court.  Def. Mem., at 9.  Smith contends that his initial case in state court only named Leonard Blavatnik and therefore his claims are not precluded as to the other named defendants.  Pl. Opp., at 1-2.  Smith's argument is unavailing.

Under the doctrine of *res judicata*, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action."  *Monahan v. New York City Dep't of Corr.*, 214 F.3d 275, 284 (2d Cir. 2000) (citations

---

[6]    Defendants also argue that Smith's complaint should be dismissed because he did not plead that Defendants have at least 15 employees, the minimum number required to trigger liability under Title VII.  Def. Mem., at 8.  However, the failure of a plaintiff to plead this particular detail is not in itself fatal in the context of a motion to dismiss: "a Title VII defendant wishing to defeat a plaintiff's claim on the ground that it lacks fifteen employees is normally entitled to seek dismissal *if the complaint shows on its face* that the element of statutory coverage is lacking."  *Da Silva v. Kinsho Int'l Corp.*, 229 F.3d 358, 365-66 (2d Cir. 2000) (emphasis added).  Smith's complaint does not allege on its face that Defendants have less than the statutory minimum number of employees, which therefore remains a factual question.

11

omitted).  Federal courts "must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Cloverleaf Realty of New York, Inc. v. Town of Wawayanda*, 572 F.3d 93, 95 (2d Cir. 2009) (quoting *Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1983)).  In New York, *res judicata* applies to judgments rendered in small claims courts.  *See, e.g.*, *Merrimack Mut. Fire Ins. Co. v. Alan Feldman Plumbing & Heating Corp.*, 961 N.Y.S.2d 183, 184 (2d Dep't 2013) (claim barred by *res judicata* based on prior small claims action).

In order to assert a defense of *res judicata*, it must be established that: (1) the previous action resulted in an adjudication on the merits; (2) the previous action involved the same parties or those in privity with them; and (3) the claims in the current action concerned the same transaction that gave rise to the previous action.  *See Cieszkowska v. Gray Line of New York*, 295 F.3d 204, 205 (2d Cir. 2002) (citing *Maharaj v. Bankamerica Corp.*, 128 F.3d 94, 97 (2d Cir. 1997)).  A prior judgment will have preclusive effect over applicable claims "even if based upon different theories or if seeking a different remedy." *Jumax Assoc. v. 350 Cabrini Owners Corp.*, 110 A.D.3d 622, 632, 973 N.Y.S.2d 631, 632 (1st Dep't 2013) (quoting *O'Brien v. City of Syracuse*, 429 N.E.2d 1158, 1160 (N.Y. 1981)).  Additionally, a plaintiff's *pro se* status does not make him immune to this defense.  *See Bey v. City of New York*, 454 Fed. App'x 1, 5-6 (2d Cir. 2011) ("[R]*es judicata* applies to *pro se* plaintiffs whose claims in a second action are based on the same factual predicates presented in the first action.") (citing *Cieszkowska*, 295 F.3d at 205-06).

There is no doubt that Smith's earlier action, dismissed with prejudice by the small claims court after a bench trial, involved a final adjudication on the merits under New York law. *See Goldstein v. New York State Urban Dev. Corp.*, 13 N.Y.3d 511, 544-45 (2009) ("[A]

dismissal with prejudice clearly constitutes an adjudication on the merits."). It is equally clear that Smith's complaint arises out of the same events and transactions that were the subject of the prior action against Leonard Blavatnik. In both, Smith alleged that he assisted clients in hiring domestic workers, that he had a verbal contract to do so for the Blavatniks' household, that he communicated with, and referred candidates to, Balmaceda, the Blavatniks' butler, and that Balmaceda sent discriminatory emails. *Compare* Compl., at 6-10, *with Smith I*, 963 N.Y.S.2d at 817-19.

The earlier action also satisfies the final element – commonality of the parties involved – as to Leonard Blavatnik, who was the named defendant. EB Household, although not named in that suit, was also involved in a prior small claims court action, in which Smith's identical claims were dismissed as "arising from the same nucleus of operative facts" as the Blavatnik complaint. *See EB Household, LLC.* By contrast, for *res judicata* to apply against the remaining defendants Emily Blavatnik and Access Industries, who were not named in any previous small claims actions dismissed on the merits, it must be separately demonstrated that each had a "sufficiently close relationship to the original defendant to justify preclusion." *Cent. Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A.*, 56 F.3d 359, 367-68 (2d Cir. 1995).[7]

As Smith knows from recent experience, Emily Blavatnik was plainly in privity with her husband Leonard Blavatnik. Judge Furman of this Court recently found Smith's federal action

---

[7]   Defendants assert that claims against Emily Blavatnik and Access Industries should automatically be precluded as both have already been sued by Smith in small claims court. Def. Reply, at 5. While that is true, the actions against them were dismissed based on Smith's failure to abide by the state court's order to apply for leave before filing these claims and therefore were not adjudicated on the merits. *See Smith v. Blavatnik* (Index No. SCNY 982/12); *UK Nanny LLC v. Access Industries* (Index No. SCNY 6052/12); *Smith v. Access Industries* (Index No. SCNY 1362/12), Exs. E, F to Fertman Decl. Therefore, for claims against Emily Blavatnik and Access Industries to be precluded, there must be privity between them and Leonard Blavatnik as the defendant in the previously-dismissed action.

against Jessica Seinfeld to be precluded by *res judicata*, based on an earlier, unsuccessful small claims action he had filed against Seinfeld's husband, alleging discrimination claims similar to those raised here against the Blavatniks. *See Seinfeld*, 2014 WL 700202, at *3 (finding wife of original defendant to be in privity). Moreover, while the factual record is not fully developed as to the precise relationship between Leonard Blavatnik and Access Industries aside from the allegation that Blavatnik owned the company, a finding of privity is also appropriate. The fact that Smith has engaged in repeated attempts to litigate the same claims against both Blavatnik and his various associated corporate entities, including Access Industries, demonstrates that Smith "was aware during the [f]irst [a]ction of the close relationship" between the two. *Burberry Ltd. v. Horowitz*, 534 F. App'x 41, 44 (2d Cir. 2013).

In sum, the dismissal of Smith's prior actions in small claims court, as outlined above, should be afforded preclusive effect and his current claims against all Defendants should be dismissed under the doctrine of *res judicata* as well.

## E.   Smith Should Be Ordered to Show Cause Why He Should Not Be Barred from Filing New Actions Without Leave of Court

Judge Furman, in dismissing the complaint against the Seinfelds, specifically put Smith on notice that, "in light of [his] history of filing meritless claims . . . further duplicative or frivolous litigation in this Court may result in an order barring him from filing new actions without prior permission." *Seinfeld*, 2014 WL 700202, at *3. Given Smith's repeated attempts to litigate identical claims both in state and federal courts, despite their obvious lack of merit as again demonstrated here, he should be ordered to show cause why he should not be enjoined from filing further complaints without leave of the court, pursuant to 28 U.S.C. § 1651. *See Iwachiw v. New York State Dep't of Motor Vehicles*, 396 F.3d 525, 529 (2d Cir. 2005) (district court may enjoin litigant from filing without leave after being provided with notice and

14

opportunity to be heard) (citing *Moates v. Barkley*, 147 F.3d 207, 208 (2d Cir. 1998)). *See also Safir v. United States Lines, Inc.*, 792 F.2d 19, 24 (2d Cir. 1986)) (district court did not abuse its discretion in enjoining individual with a "history of filing vexatious, burdensome, and meritless FOIA complaints" from filing further complaints without leave of court); *In re Martin-Trigona*, 737 F.2d 1254, 1262 (2d Cir. 1984) (district courts have "the power and the obligation to protect the public and the efficient administration of justice from [an individual's] litigious propensities").

## III.  CONCLUSION

For the reasons stated herein, I recommend that Smith's action be dismissed with prejudice for failure to state a claim or, alternatively, under the doctrine of *res judicata*.  I further recommend that Smith be ordered to show cause why he should not be enjoined from filing further complaints without permission of the Court.

## PROCEDURE FOR FILING OBJECTIONS
## TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6.  Such objections, and any responses to such objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Paul A. Crotty and to the chambers of the undersigned, United States Courthouse, 500 Pearl Street, New York, New York, 10007.  Any requests for an extension of time for filing objections must be directed to Judge Crotty.  **FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.** *See Thomas v. Arn*, 474 U.S. 140 (1985); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92

15

(2d Cir. 2010); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.  If Smith does not have access to cases

cited herein that are reported on LexisNexis or Westlaw, he should request copies from

Defendants' counsel.  *See Lebron v. Sanders*, 557 F.3d 76, 79 (2d Cir. 2009).

Dated: New York, New York
      July 30, 2014

                                    JAMES L. COTT
                                    United States Magistrate Judge

16